UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 14-9702-JGB (AGRx)** | Date | February 26, 2015 |
| Title | *Sol Casidsid, et al. v. Fresenius USA, Inc., et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) DENYING Plaintiffs' Motion to Remand (Doc. No. 18); and (2) VACATING the March 2, 2015, Hearing (IN CHAMBERS)

Before the Court is Plaintiffs' Motion to Remand. (Doc. No. 18.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers timely filed in support of and in opposition to the motion, the Court DENIES Plaintiffs' Motion to Remand and VACATES the March 2, 2015, hearing.

## I.   BACKGROUND

Plaintiffs Sol Casidsid and forty-three other individual named plaintiffs (collectively "Plaintiffs") filed their Complaint against Defendants Fresenius USA, Inc., Fresenius USA Manufacturing, Inc., Fresenius Medical Care Holdings, Inc., Fresenius Medical Care North America, Inc., Fresenius USA Marketing, Inc., Walter L. Weisman, Ben Lipps, and fictitious persons (collectively, "Defendants") in the Superior Court of California, County of Los Angeles, on April 2, 2014. ("Compl.," Doc. No. 1-2.) The Complaint asserted products liability claims related to personal injuries and death resulting from the use of Defendants' products "GranuFlo Dry Acid Concentrate" and "NaturaLyte Liquid Acid Concentrate." (Compl. ¶¶ 1-3.)

Numerous other "GranuFlo/NaturaLyte" cases were also filed in California state courts, and, on January 21, 2013, plaintiffs in four of those cases filed a petition for coordination with the Chair of the California Judicial Counsel. ("Pet. to Coordinate," Declaration of Bahar Dejban ("Dejban Decl."), Ex. B, Doc. No. 19-1.) The four cases sought to be coordinated into the judicial council coordinated proceedings ("JCCP") were Sanchez, et al. v. Fresenius USA, Inc., et al., Case No. BC499080, Hobbs, et al. v. Fresenius USA, Inc., et al., Case No. 13CECG00161,

Frazee, et al. v. Fresenius USA, Inc., et al., Case No. 37-2013-00030004-CU-PL-CTL, and Rollins, et al. v. Fresenius USA, Inc., et al., Case No. 250199. (Id. at 1.) The petition was approved and the JCCP created on March 20, 2013. (Opp'n at 3.)

On April 15, 2014, Plaintiffs in this action filed a request to coordinate their claims as part of the JCCP. ("Casidsid Petition," Dejban Decl., Ex. C.) The JCCP court granted the Casidsid Petition, and the case was coordinated into the JCCP, on May 5, 2104. (Declaration of David H. Stern ("Stern Decl.") ¶ 3, Doc. No.19-1.)

On July 16, 2014, fifty plaintiffs in another GranuFlo/NaturaLyte case— Baker, et al. v. Fresenius USA, Inc., et al., Case No. BC550187 — filed a request to coordinate their claims into the JCCP. ("Baker Petition," Dejban Decl., Ex. D.) The JCCP court granted the Baker Petition on August 14, 2104, after which that case was coordinated into the JCCP, and the total number of plaintiffs in the coordinated cases exceeded one hundred plaintiffs. (Stern Decl. ¶ 4.)

On December 1, 2014, the JCCP coordination trial judge approved the parties' stipulation to select the claims of only four plaintiffs for discovery and trial; the trials would involve a single plaintiff per trial. (Dejban Decl., Ex. E.)

Defendants filed their Notice of Removal on December 18, 2014. ("Not. of Removal," Doc. No. 1.) Plaintiffs moved to remand on January 20, 2015.[1] ("Motion," Doc. No. 18.) Defendants filed their opposition on February 9, 2015. ("Opp'n," Doc. No. 19.)

## II. LEGAL STANDARD

The Class Action Fairness Act of 2005 ("CAFA") grants the district courts original jurisdiction over "mass actions" in the same manner as if they were "class actions." See 28 U.S.C. § 1332(d)(11)(A). A "mass action" is "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). However, a mass action may include only those plaintiffs who are diverse from defendants and whose claims involve over $75,000 in controversy. Id.; 28 U.S.C. § 1332(a). Moreover, a mass action does not include cases in which "the claims have been consolidated or coordinated solely for pretrial proceedings." 28 U.S.C. § 1332(d)(11)(B)(ii)(IV). Similar to a "class action," a federal district court has jurisdiction over a "mass action" if the aggregate amount in controversy exceeds $5,000,000 and the parties are minimally diverse. See 28 U.S.C. § 1332(d)(2), 1332(d)(11)(A).

---

[1] Plaintiffs failed to meet and confer with Defendants, pursuant to Local Rule 7-3. The Court may deny Plaintiffs' motion on that basis alone. See Cucci v. Edwards, 510 F. Supp. 2d 479, 486 (C.D. Cal. 2007). Nevertheless, the Court will consider the merits of Plaintiffs' motion. The Court warns Plaintiffs that future failures to meet and confer will not be tolerated. The parties are directed to familiarize themselves with the Federal Rules of Civil Procedure, the Local Rules of the Central District of California, and this Court's Standing Order. (See Doc. No. 15.) The Court may strike any future filings that fail to comply with the Local Rules or the Court's Standing Order.

Under CAFA, "the burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006). In ordinary removal cases, a presumption against removal jurisdiction may be appropriate and "[f]ederal jurisdiction . . . rejected if there is any doubt as to the right of removal." Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014).

### III. DISCUSSION

**A. Removal as Mass Action**

Plaintiffs assert that this case does not satisfy the requirements for removal as a mass action. (Mot. at 3-5.) In contrast, Defendants maintain that Plaintiffs proposed to try their case jointly with the claims of 100 or more persons, thus qualifying as part of a "mass action" pursuant to 28 U.S.C. § 1332(d)(11)(B)(i).[2] (Opp'n at 1, 7-11.) Defendants argue that Plaintiffs' petition for coordination satisfied the standard set forth in Corber v. Xanodyne Pharm., Inc., 771 F.3d 1218, 1220 (9th Cir. 2014) (en banc), and should therefore be characterized as a proposal to try the case jointly with the coordinated cases. (Opp'n at 7-9.)

Plaintiffs raise three main arguments to support their position that they did not propose to try their case jointly with 100 or more persons. First, they contend that a joint trial was clearly not sought because they merely sought to *coordinate* their case with others, pursuant to California Code of Civil Procedure § 404 ("Section 404"), and not to *consolidate* it with other cases under California Code of Civil Procedure § 1048 ("Section 1048"). (Mot. at 7.) However, this distinction is not dispositive. Corber itself involved a petition for coordination pursuant to California Code of Civil Procedure § 404. See Corber, 771 F.3d at 1220. A motion to consolidate pursuant to Section 1048 would certainly be even stronger evidence of a plaintiff's intent to propose a joint trial, but, as clearly held by the Ninth Circuit, a request to coordinate pursuant to Section 404 can similarly act as a proposal to try cases jointly. See Corber, 771 F.3d at 1224-25.

Second, Plaintiffs assert that they did not propose a joint trial. (Mot. at 4-5.) To the contrary, Plaintiffs' petition for coordination specifically sought to coordinate the relevant cases "before one judge for all purposes." (Casidsid Pet. at 2.) Furthermore, the Casidsid Petition highlighted how "coordination will avoid the risk of duplicative or inconsistent rulings, orders and judgments." (Id. at 2, 6.) These statements are analogous to those relied upon by the Ninth Circuit in Corber. The Ninth Circuit highlighted the facts that the plaintiffs sought coordination "for all purposes," which the Ninth Circuit concluded "must include the purposes of trial." Corber, 771 F.3d at 1223. As further support, the Ninth Circuit looked to the fact that the

---

[2] The parties do not dispute either that the amount in controversy exceeds $5,000,000 or that the parties are minimally diverse, pursuant to 28 U.S.C. § 1332(d)(2).

plaintiffs had highlighted their "concerns that there could be potential 'duplicate and inconsistent rulings, orders, or judgments'" if the cases were not coordinated. Id. at 1221. Thus the reasons for coordination expressed in Plaintiffs' petition, although sparse, mirror those set forth by the plaintiffs in Corber. Although Plaintiffs petition is short and failed to include detailed reasons for coordination that reflect a strong desire to try the cases jointly, the petition also did not "expressly seek[] to limit its request for coordination to pre-trial matters, and thereby align with the mass action provision's exception" for cases coordinated solely for pretrial proceedings. Corber, 771 F.3d at 1224 (citing 28 U.S.C. § 1332(d)(11)(B)(ii)(IV)). Plaintiffs are quite right that all petitions for coordination under Section 404 are not "per se proposals to try cases jointly for the purposes of CAFA's mass action provision." Id. However, Plaintiffs' petition did not include any serious efforts to "qualif[y] their coordination request by saying that it was intended to be solely for pre-trial purposes." Corber, 771 F.3d at 1224. Thus, pursuant to Corber, Plaintiffs' petition to coordinate represents a proposal for a joint trial, pursuant to 28 U.S.C. § 1332(d)(11).

Third, Plaintiffs contend that they cannot be viewed as having proposed a joint trial because, on December 1, 2014, the JCCP judge approved a stipulation to hold "bellwether" trials, separately trying the claims of only four individual plaintiffs. (Mot. at 3-4.) However, Defendants correctly point out that bellwether trials are not necessarily inconsistent with a proposal to try cases jointly. (Opp'n at 10-11.) In Corber, the Ninth Circuit approvingly cited the Seventh Circuit's decision in In re Abbott Laboratories, Inc., 698 F.3d 568 (7th Cir. 2012), and the Eighth Circuit's decision in Atwell v. Boston Scientific Corp., 740 F.3d 1160 (8th Cir. 2013), both of which interpreted requests by plaintiffs as proposals for joint trials. See Corber, 771 F.3d at 1225. Both of those cases noted that holding "bellwether" or "exemplar" trials qualified as trying cases jointly. See Abbot, 698 F.3d at 573 (referencing exemplar trials and explaining that "a joint trial can take different forms as long as the plaintiffs' claims are being determined jointly"); Atwell, 740 F.3d at 1165-66 (holding that purpose of plaintiff's proposal for bellwether trial was to obtain joint trial). Plaintiffs attempt to distinguish this action from Abbott and Atwell by looking to the fact that Plaintiffs' stipulation to hold four bellwether trials does not specify whether the trials would be binding on the remaining Plaintiffs. However, the Seventh Circuit explained in Abbott that "claim preclusion" as to the remaining plaintiffs can be enough to qualify the exemplar or bellwether trial as a joint trial. Abbott, 698 F.3d at 573 (citing Bullard v. Burlington N. Santa Fe Ry. Co., 535 F.3d 759, 762 (7th Cir. 2008)). Thus Plaintiffs may not have agreed that the bellwether cases would be binding on other plaintiffs, but they cannot prevent the results of those trials from having preclusive effect on the other litigants.

The Court need not decide whether stipulating to hold four bellwether trials is properly interpreted as a proposal for a joint trial. As discussed above, Plaintiffs previously proposed a joint trial through their petition for coordination, and, as the Ninth Circuit explained in Corber, a court "must determine whether Plaintiffs *proposed* a joint trial, not whether one will occur at some future date." Corber, 771 F.3d at 1225 n.5 (emphasis in original). In other words, whether the joint trial will certainly occur is unimportant; what matters is the proposal. Perhaps Plaintiffs could have escaped mass action jurisdiction by explicitly stipulating both to try each case separately and to "coordinate solely for pretrial purposes," thus ushering this case clearly within the bounds of that statutory exception. See 28 U.S.C. § 1332(d)(11)(B)(ii) ("[T]he term 'mass action' shall not include any civil action in which . . . the claims have been consolidated or

coordinated solely for pretrial proceedings.") However, Plaintiffs' stipulation did not include such express provisions, instead merely requesting bellwether trials. Accordingly, that stipulation for bellwether trials does not negate Plaintiffs' previous proposal for a joint trial.

In sum, Plaintiffs' petition for coordination sufficiently demonstrated a proposal for the cases to be tried jointly as a mass action, and thus this Court has jurisdiction over the coordinated cases pursuant to 28 U.S.C. § 1332.

### B. Timeliness of Removal

Plaintiffs argue that, even if this case is removable as a mass action, Defendants' notice of removal was untimely and that remand is therefore appropriate. (Mot. at 6.)

Cases filed in state court may be removed to a federal district court pursuant to 28 U.S.C. § 1446. That statute expressly provides two thirty-day windows for removal. First, a defendant may remove within thirty days of the defendant receiving the complaint. See 28 U.S.C. § 1446(b)(1). Here, removal was clearly not completed during the first thirty-day window; over eight months passed between when Plaintiffs filed the Complaint on April 2, 2014, (Doc. No. 1-2.), and when Defendants filed their notice of removal on December 18, 2014, (Doc. No. 1).

Second, "if the case stated by the initial pleading is not removable," a defendant may remove within thirty days after receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Plaintiffs contend that, in order to fall within the second thirty-day window, Defendants must have removed within thirty days after Plaintiffs filed their petition to coordinate, (Mot. at 6), which occurred on April 15, 2014, (Dejban Decl., Ex. C). Defendants missed that second thirty-day window by eight months.

The Ninth Circuit has held that a defendant may remove outside the two thirty-day periods prescribed by 28 U.S.C. § 1446 for certain reasons. See Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1125 (9th Cir. 2013). Recently, the Ninth Circuit explained that a change in law rendering removable a previously non-removable case may trigger an additional thirty-day window during which the defendant may remove. See Rea v. Michaels Stores Inc., 742 F.3d 1234, 1238 (9th Cir. 2014) (per curiam).

Defendants filed their Notice of Removal on the thirtieth day after the Ninth Circuit issued its decision in Corber v. Xanodyne Pharm., Inc., 771 F.3d 1218, 1220 (9th Cir. 2014) (en banc). (Doc. No. 1.) As this Court has previously held, that case represented an intervening change in law, reversing the preexisting precedent of Corber v. Xanodyne Pharm., Inc., 540 F. App'x 650 (9th Cir. 2013) and Romo v. Teva Pharm. USA, Inc., 731 F.3d 918 (9th Cir. 2013). Previously, the Ninth Circuit had held that cases consolidated "for all purposes" and to avoid "inconsistent judgments," without mentioning a joint trial, were not interpreted as proposals to try the cases jointly, pursuant to 28 U.S.C. § 1332(d)(11)(B)(i). As discussed above, however, the en banc decision in Corber made such cases removable and thus constituted a relevant change in law.

Accordingly, Defendants timely removed within thirty days following the issuance of a case that changed the law so as to render removable a previously non-removable case.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion to Remand and VACATES the March 2, 2015, hearing.

**IT IS SO ORDERED.**